UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

KENNETH SCHEIBELHUT, JR.,

    Plaintiff,

v.

ANDREW M. SAUL,
Commissioner of the Social Security
Administration,

    Defendant.

CAUSE NO. 3:19-CV-209 DRL

ORDER AND OPINION

Kenneth Scheibelhut, Jr. appeals from the Social Security Commissioner's final judgment denying his disability insurance. Mr. Scheibelhut requests remand of his claim for further consideration. Having reviewed the underlying record and the parties' arguments, the court grants Mr. Scheibelhut's request for remand (ECF 1) and remands the Commissioner's decision.

BACKGROUND

Mr. Scheibelhut suffers from a variety of physical and mental health impairments. Mr. Scheibelhut has only completed the seventh grade and has no past relevant work. ECF 8 at 238, 755. Mr. Scheibelhut's mental impairments include intellectual disability, generalized anxiety disorder, mood disorder, and attention deficit disorder. *Id.* at 747. As for his physical impairment, Mr. Scheibelhut was diagnosed with status-post right knee arthroplasty. *Id.*

Mr. Scheibelhut filed Title II and Title XVI applications for benefits on November 30, 2012, which were denied initially on January 15, 2013, and again upon reconsideration on April 29, 2013. ECF 8 at 15. His claims were heard by an Administrative Law Judge (ALJ) on March 4, 2015. *Id.* In a March 11, 2016 decision, the ALJ denied Mr. Scheibelhut's petition on the basis that he could not show that he was disabled as defined by the Social Security Act. *Id.* at 12. Mr. Scheibelhut filed a timely

1

complaint with the United States District Court for the Northern District of Indiana on May 30, 2017. *Id.* at 843. The court remanded the case and instructed the ALJ to incorporate all of Mr. Schebelhut's impairments in the residual function capacity (RFC) and to provide more limitations regarding his ability to work with others. *Id.* at 868-69. A second hearing was held on October 12, 2018. *Id.* at 944-48. On November 29, 2018, the ALJ issued an unfavorable decision. *Id.* at 741-64.

The ALJ came to a conclusion relying in part on the opinions of the state psychological consultants. ECF 8 at 754. The ALJ found that Mr. Scheibelhut had the RFC to perform light exertional work as defined in 20 C.F.R. 404.1567(b) as he was able to lift and/or carry 20 pounds occasionally and 10 pounds frequently, and sit, stand and/or walk for six hours in an eight hour workday with the following limitations: he can occasionally climb ladders, ropes, scaffolds, ramps, and stairs; and can occasionally balance, stoop, kneel, crouch, and crawl. *Id.* at 750. He can have occasional exposure to hazards, such as unprotected heights and flammable liquids. *Id.* In addition, Mr. Scheibelhut is limited to simple, routine tasks; restricted to 1-2 step jobs that involve performing essentially the same tasks in the same place, every day; and limited to work that requires minimal reading and writing skills. *Id.* Additionally, Mr. Scheibelhut can perform work requiring occasional, routine judgment, defined as being able to make simple work-related decisions, and can adapt to occasional, simple workplace changes. *Id.* Mr. Scheibelhut can have no interaction with the public; is limited to brief and superficial interaction with coworkers; cannot perform tandem tasks or teamwork where one production step is dependent on the prior step. *Id.* Finally, Mr. Scheibelhut is limited to brief and superficial interaction with supervisors, defined as not requiring a supervisor's critical checking of the person's work. *Id.* While the ALJ found that Mr. Scheibelhut's RFC prevented him from performing his past relevant work as a card processing clerk or a material clerk, the ALJ found that he could perform a significant number of jobs in the national economy. *Id.* at 755. This decision became final when the Appeals Council denied Mr. Scheibelhut's request for review. *Id.* at 1.

STANDARD

The court has authority to review the Council's decision under 42 U.S.C. § 405(g); however, review is bound by a strict standard. Because the Council denied review, the court evaluates the ALJ's decision as the Commissioner's final word. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The ALJ's findings, if supported by substantial evidence, are conclusive and nonreviewable. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is that evidence which "a reasonable mind might accept as adequate to support a conclusions," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and may well be less than a preponderance of the evidence, *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citing *Richardson*, 402 U.S. at 401). If the ALJ has relied on reasonable evidence and built an "accurate and logical bridge from the evidence to conclusion," the decision must stand. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). Even if "reasonable minds could differ" concerning the ALJ's decision, the court must affirm if the decision has adequate support. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

DISCUSSION

When considering a claimant's eligibility for disability benefits, an ALJ must apply the standard five-step analysis: (1) is the claimant currently employed; (2) is the claimant's impairment or combination of impairments severe; (3) do her impairments meet or exceed any of the specific impairments listed that the Secretary acknowledges to be so severe as to be conclusively disabling; (4) if the impairment has not been listed as conclusively disabling, given the claimant's residual function capacity, is the claimant unable to perform her former occupation; (5) is the claimant unable to perform any other work in the national economy given her age, education, and work experience. 20 C.F.R. § 404.1520; *Young v. Secretary of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). The claimant bears the burden of proof until step five, where the burden shifts to the Commissioner to prove that the claimant can perform other work in the economy. *See Young*, 957 F.2d at 389.

Mr. Scheibelhut appears to challenge the ALJ's conclusions that he is not totally disabled. He offers three arguments: (1) the ALJ erred at step five by not presenting all of Mr. Scheibelhut's limitations to the vocational expert (VE); (2) the ALJ failed to account for all his impairments in both the RFC and hypotheticals to the VE; and (3) the ALJ erred in considering the opinions of the agency-contracted psychological examiners, resulting in a failure to properly consider Listing 12.05(b).

The court starts with the last argument. Mr. Scheibelhut contends that the ALJ failed to consider the opinions of three agency-contracted consultative examiners. An ALJ must weigh all medical opinion evidence using a "checklist of factors" found in 20 C.F.R. § 404.1527(c). *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). The ALJ must discuss each medical opinion and the weight given to each opinion if the court is to provide meaningful review. *Carlson v. Shalala,* 999 F.2d 180, 181 (7th Cir. 1993) (citations omitted). "If the ALJ were to ignore an entire line of evidence, that would fall below the minimal level of articulation required." *Id.*

Dr. Ronald Craker conducted an examination on June 29, 2012. Dr. Craker noted that, during testing, he witnessed Mr. Scheibelhut's "problems holding an instruction in his mind and not losing track of what he was supposed to be doing." EFC 8 at 321. Dr. Craker also opined that Mr. Scheibelhut would need assistance with managing his funds. *Id.* Dr. Craker opined that Mr. Scheibelhut "does not possess the skills needed to learn, remember and comprehend simple instructions, and cannot attend, concentrate and complete simple tasks. His intellectual limitations would render most jobs not feasible for him." *Id.* at 322.

Mr. Scheibelhut underwent a consultative examination with Dr. Bradford Eaton on January 7, 2013. Dr. Eaton opined that Mr. Scheibelhut would need a representative payee if he were awarded any financial assistance. ECF 8 at 369. Dr. Eaton observed that Mr. Scheibelhut was a poor historian and "had a great deal of difficulty organizing his responses to questions." *Id.* at 366.

Mr. Scheibelhut attended a third consultative examination in November 2017 with Dr. Alan H. Wax. Dr. Wax noted that, though Mr. Scheibelhut was cooperative, at times he seemed animated and hypomanic, and at other times he was more sedated. EFC 8 at 1152. Dr. Wax also noted Mr. Scheibelhut's speech was intelligible, but his speech was tangential and somewhat rambling. *Id.* at 1153. He further stated that Mr. Scheibelhut would need assistance in managing his funds. *Id.* at 1154.

The ALJ mentioned the opinions of Dr. Wax and Dr. Eaton when he discussed the Paragraph B criteria at step three, but he did not fully analyze the opinions or assign them any weight in the RFC discussion. The ALJ listed the findings from the examinations, but he seems not to have provided any analysis or discussion of the opinions from these two examiners.

The ALJ did assign weight to the third examiner's opinion, that of Dr. Craker, albeit in no more than two sentences. The ALJ noted that Dr. Craker opined that Mr. Schebelhut did not possess the skills to learn simple instructions or to concentrate. The ALJ gave Dr. Craker's opinion "little weight … as it is inconsistent with the record." *Id.* at 755. The ALJ did not state what medical evidence was inconsistent with Dr. Craker's opinion, so failed to build a logical bridge from the medical evidence to the conclusion, or one that would permit review.

The Commissioner responds by saying that the ALJ considered all three consultative examiner opinions. While the ALJ mentioned all three consultative examiners, he did not provide any analysis or assign weight to either Dr. Wax's or Dr. Eaton's opinions. In addition, though the ALJ assigned weight to Dr. Craker's opinion, there was no discussion or analysis of the medical evidence to support that weight. The ALJ failed to discuss the relevant factors from 20 C.F.R. § 404.1527(c), and the court cannot conduct meaningful review where the ALJ has not provided an adequate discussion of the evidence.

More problematic, the ALJ did not assign weight to or otherwise provide analysis of the opinions from Dr. Wax or Dr. Eaton. While the ALJ referenced Dr. Wax's and Dr. Eaton's opinions

5

in the decision, he simply listed observations from each opinion. The ALJ provided no analysis of either opinion, failed to assign weight, and provided no discussion of the factors in 20 C.F.R. § 404.1527(c). A list of evidence does not discharge an ALJ's duty to provide a complete analysis to form a logical bridge from the evidence to a conclusion. *Smith v. Astrue*, No. 09 CV 6210, 2011 U.S. Dist. LEXIS 17691, 2011 WL 722539, 31 (N.D. Ill. Feb. 22, 2011) (noting that "cataloguing" the evidence "is no substitute for analysis or explanation"). The opinions of Dr. Wax, Dr. Eaton, and Dr. Craker support each other in multiple areas and underscore Mr. Scheibelhut's subjective symptoms and allegations. They are thus worthy of analysis and an assignment of weight after consideration of the record evidence.

Mr. Scheibelhut makes further arguments regarding the RFC, the hypotheticals to the VE, and the ALJ's Listing analysis. However, because the ALJ failed to discuss three of the medical opinions, the court need not address these other arguments. Proper analysis of the medical opinions may alter the Listing analysis and the RFC, which would in turn alter the hypotheticals given to the VE. On remand, the ALJ should properly analyze and discuss all of the medical opinions in the record.

## CONCLUSION

The court finds that the ALJ erred in failing to properly analyze the medical opinions of the three consultative examiners. The court accordingly GRANTS Mr. Scheibelhut's request for remand and REMANDS the Commissioner's decision.

SO ORDERED.

February 10, 2020        *s/ Damon R. Leichty*
                         Judge, United States District Court